IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON


MARSHA I. DENNING,                          06-CV-3084-BR

                    Plaintiff,              OPINION AND ORDER

v.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

                    Defendant.


**Phil Studenberg**
200 Pine St.
Klamath Falls, OR 97601
(541) 882-1426

             Attorney for Plaintiff


**KARIN J. IMMERGUT**
United States Attorney
**NEIL J. EVANS**
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, OR 97204-2904
(503) 727-1000

**VIKASH CHHAGAN**
Acting Regional Chief Counsel
**RICHARD A MORRIS**
Special Assistant to the United States Attorney
701 5th Avenue, Suite 2900, M/S 901
Seattle, WA 98104-7075
(206) 615-2156

        Attorneys for Defendant

**BROWN, Judge.**

    Plaintiff Marsha Denning seeks judicial review of the Social Security Commissioner's final decision in which he denied Denning's applications for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) under Titles II and XVI of the Social Security Act.  This Court has jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c).

    Following a review of the record, the Court **REVERSES** the Commissioner's decision and **REMANDS** this case for further administrative proceedings.

## ADMINISTRATIVE HISTORY

    Denning previously applied for SSI on January 23, 1990.  Tr. 31.[1]  Her application was initially denied.  Tr. 31.  Denning then protectively applied for DIB on July 30, 1997; for SSI on May 11, 1999; and for DIB on July 28, 1999.  Tr. 358-61.  These

_____

    [1] Citations to the official transcript filed on April 18, 2007, are cited as "Tr."

claims were denied initially and on reconsideration.  Tr. 362-65.
An Administrative Law Judge (ALJ) issued a decision on
November 28, 2001, in which he found Denning was not entitled to
benefits.  Tr. 31.  That decision became the final decision of
the Commissioner on September 23, 2006, when the Appeals Council
denied Denning's request for review.  Tr. 17-19.  Denning's
current applications for SSI and DIB do not reopen these prior
claims.

On April 19, 2002, Denning filed her most recent
applications for DIB and SSI in which she asserted a disability
onset date of November 29, 2001.  Tr. 392-95, 660-62.  The
applications were denied initially and on reconsideration.
Tr. 31, 374, 381.  An ALJ held a hearing on August 19, 2004.
Tr. 46-50.  At the hearing, Denning and Vocational Expert (VE)
Dennis Elliot testified.  Tr. 680-720.  Denning was not
represented by an attorney.  Tr. 680-84.

The ALJ issued a decision on August 19, 2004, in which he
found Denning was not entitled to benefits.  Tr. 31-44.  That
decision became the final decision of the Commissioner on
September 23, 2006, when the Appeals Council denied Denning's
request for review.  Tr. 17-19.


## BACKGROUND

Denning was 48 years old at the time of the hearing.

3  -  OPINION AND ORDER

Tr. 710.  She graduated from high school and subsequently
received training as a veterinary technician and a skin-care
specialist.  Tr. 328, 539, 714-15.  Denning has worked as a
veterinary technician, waitress, teacher's aide, cashier/clerk,
and esthetician.  Tr. 463-70, 539-40.

Denning has been diagnosed with multiple physical ailments.
She suffers from chronic pain, fatigue, and insomnia as a result
of fibromyalgia; myofascial pain; thyroiditis; and multiple
musculoskeletal injuries including spondylosis of the neck,
scoliosis of the spine, sclerosis of the right shoulder and left
tibia, and osteoarthritis of the joints.  Tr. 569-78, 629-37.
Denning contends these ailments have disabled her since
November 29, 2001.

In addition, Denning has been diagnosed with several
psychological disorders including panic and anxiety-related
disorders; personality disorder; cognitive disturbance; and post-
traumatic stress syndrome (PTSD) as a result of multiple, violent
assaults.  Tr. 538-43, 569-78, 594-605.


## **STANDARDS**

The initial burden of proof rests on the claimant to
establish disability.  *Ukolov v. Barnhart*, 420 F.3d 1002, 1004
(9th Cir. 2005).  To meet this burden, a claimant must
demonstrate her inability "to engage in any substantial gainful

activity by reason of any medically determinable physical or
mental impairment which . . . has lasted or can be expected to
last for a continuous period of not less than 12 months."
42 U.S.C § 423(d)(1)(A).  The Commissioner bears the burden of
developing the record.  *Reed v. Massanari*, 270 F.3d 838, 841 (9th
Cir. 2001).  When important medical evidence is incomplete, the
ALJ has a duty to recontact the provider for clarification.
20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).  *See also Brown v.
Heckler*, 713 F.2d 441, 443 (9th Cir. 1983)(ALJ has a "special
duty to fully and fairly develop the record" even when claimant
is represented by an attorney).

The district court must affirm the Commissioner's decision
if it is based on proper legal standards and the findings are
supported by substantial evidence in the record as a whole.
42 U.S.C. § 405(g).  *See also Batson v. Comm'r of Soc. Sec.
Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004).  "Substantial
evidence means more than a mere scintilla but less than a
preponderance, i.e., such relevant evidence as a reasonable mind
might accept as adequate to support a conclusion." *Robbins v.
Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006)(internal
quotations omitted).

The ALJ is responsible for determining credibility,
resolving conflicts in the medical evidence, and resolving
ambiguities.  *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir.

2001).  The court must weigh all of the evidence whether it supports or detracts from the Commissioner's decision.  *Robbins,* 466 F.3d at 882.  The Commissioner's decision must be upheld even if the evidence is susceptible to more than one rational interpretation.  *Webb v. Barnhart*, 433 F.3d 683, 689 (9th Cir. 2005).  The court may not substitute its judgment for that of the Commissioner.  *Widmark v. Barnhart*, 454 F.3d 1063, 1070 (9th Cir. 2006).

## DISABILITY ANALYSIS

### I.    The Regulatory Sequential Evaluation

The Commissioner has developed a five-step sequential inquiry to determine whether a claimant is disabled within the meaning of the Act.  *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987).  *See also* 20 C.F.R. §§ 404.1520(a), 416.920(a).  Each step is potentially dispositive.

In Step One, the claimant is not disabled if the Commissioner determines the claimant is engaged in substantial gainful activity.  *Yuckert*, 482 U.S. at 140.  *See also* 20 C.F.R. §§ 404.1520(a)(4)(I), 416.920(b).

In Step Two, the claimant is not disabled if the Commissioner determines the claimant does not have any "medically severe impairment or combination of impairments." *Yuckert*, 482 U.S. at 140-41.  *See also* 20 C.F.R. §§ 404.1509,

404.1520(a)(4)(ii), 416.920(c).

In Step Three, the claimant is disabled if the Commissioner determines the claimant's impairments meet or equal "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." *Yuckert*, 482 U.S. at 140-41. *See also* 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(d). The criteria for the listed impairments, known as Listings, are enumerated in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listing of Impairments).

If the Commissioner proceeds beyond Step Three, he must assess the claimant's residual functional capacity (RFC). The claimant's RFC is an assessment of the sustained, work-related activities that the claimant can still do on a regular and continuing basis despite her limitations. 20 C.F.R. §§ 404.1520(e), 416.945(a). *See also* Social Security Ruling (SSR) 96-8p. In Step Four, the claimant is not disabled if the Commissioner determines the claimant retains the RFC to perform work that she has done in the past. *Yuckert*, 482 U.S. at 141-42. *See also* 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(e).

If the Commissioner reaches Step Five, he must determine whether the claimant is able to do any other work that exists in the national economy. *Yuckert*, 482 U.S. at 141-42. *See also* 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(e),(f). Here the burden shifts to the Commissioner to show a significant number of jobs

exist in the national economy that the claimant is able to perform. *Yuckert*, 482 U.S. at 141-42. *See also Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). The Commissioner may satisfy this burden through the testimony of a VE or by reference to the Medical-Vocational Guidelines set forth in the regulations at 20 C.F.R. Part 404, Subpart P, Appendix 2. If the Commissioner meets this burden, the claimant is not disabled. 20 C.F.R. §§ 404.1520(g)(1), 416.920(f)(1).

## **ALJ'S FINDINGS**

At Step One, the ALJ found Denning had not performed substantial gainful activity after her alleged onset date as defined in 20 C.F.R. § 404.1572 even though she had worked part time at a hamburger stand in the summer of 2003. Tr. 33.

At Step Two, the ALJ found Denning's multiple physical impairments, including fibromyalgia, right-shoulder impingement, and degenerative disc disease, are severe. Tr. 43.

At Step Three, however, the ALJ found Denning is not entitled to benefits because her impairments do not meet or equal the criteria of any of the listed impairments as enumerated in 20 C.F.R. Part 404, Subpart P, Appendix. Tr. 43.

At Step Four, the ALJ found Denning retains the RFC to lift and to carry 20 pounds occasionally and 10 pounds frequently; to do unlimited pushing or pulling; to sit, to stand, or to walk for

six hours of an eight-hour workday if allowed to periodically alternate between sitting and standing; to climb ramps or stairs occasionally, but not ropes, ladders, or scaffolds; and to do overhead lifting occasionally. Tr. 43. In accord with the VE's testimony, the ALJ concluded Denning is able to return to her past relevant work as a veterinary technician or a teacher's aide. Tr. 43. Although the ALJ found at Step Four that Denning is not disabled, the ALJ proceeded to Step Five.

At Step Five, the ALJ found Denning could perform jobs that exist in the national economy such as order clerk and telephone solicitor in spite of her physical limitations. Tr. 43. Thus, the ALJ concluded Denning was not disabled and, therefore, not entitled to benefits. Tr. 43-44.


### DISCUSSION

Denning contends the ALJ erred by (1) failing to accord adequate weight to the opinion of Michael Harris, M.D., one of Denning's treating physicians and (2) failing to address adequately the opinion of Geoffrey Bartol, Ph.D., Denning's consulting psychologist.

**I.  Medical Opinions Generally.**

When the record contains conflicting medical evidence, the ALJ is responsible for determining credibility and resolving the conflict. *Thomas v. Barnhart*, 278 F.3d 947, 956 (9th Cir. 2002).

An ALJ may reject an examining or treating physician's opinion
when it is inconsistent with the opinions of other treating or
examining physicians if the ALJ makes "findings setting forth
specific, legitimate reasons for doing so that are based on
substantial evidence in the record." *Id.* at 957 (9th Cir.
2002)(quoting *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir.
1989)).  The ALJ also must give specific, legitimate reasons for
rejecting the opinion of an examining physician when that opinion
conflicts with another physician's opinion or with evidence in
the record.  *Magallanes*, 881 F.2d at 751.  When the medical
opinion of an examining or treating physician is uncontroverted,
however, the ALJ must give "clear and convincing reasons" for
rejecting it.  *Id*.  *See also Lester v. Chater*, 81 F.3d 821,
830-32 (9th Cir. 1995).

A nonexamining physician is one who neither examines nor
treats the claimant.  *Lester*, 81 F.3d at 830.  "The opinion of a
nonexamining physician cannot by itself constitute substantial
evidence that justifies the rejection of the opinion of either an
examining physician or a treating physician." *Id.* at 831.  When
a nonexamining physician's opinion contradicts an examining
physician's opinion and the ALJ gives greater weight to the
nonexamining physician's opinion, the ALJ must articulate his
reasons for doing so.  *See, e.g., Morgan v. Comm'r of Soc. Sec.
Admin*, 169 F.3d 595, 600-01 (9th Cir. 1999).  A nonexamining

physician's opinion can constitute substantial evidence if it is supported by other evidence in the record. *Id.* at 600.

## II. Dr. Harris.

The ALJ appears to reject Dr. Harris's opinion based on his conclusion that the form Denning submitted to the Oregon Employment Department identifying her functional limitations was filled out by Denning herself even though Dr. Harris signed and dated it. Tr. 33. Even though Denning challenges the ALJ's determination that she filled out the form, she argues it is not, in any event, a sufficient basis to disregard Dr. Harris's opinion.

### A. Dr. Harris's Opinion.

Dr. Harris treated Denning seven times between July 2001 and August 2002. Tr. 567-92. Dr. Harris diagnosed Denning with the following physical ailments: myofascial pain; fibromyalgia; hypothyroidism and Hashimoto's thyroiditis; chronic persistent fatigue and insomnia; and chronic pain due to multiple musculoskeletal injuries, including spondylosis of the neck and of the lumbar spine at L4-L5, scoliosis of the thoracic spine, sclerosis of the left tibia and right shoulder, and osteoarthritis of the joints. Tr. 173-75, 569-77.

On October 7, 2002, Dr. Harris signed a medical information form from the Oregon Employment Department in which Denning's physical ailments and the limitations on her ability to work were

outlined.  Tr. 417.  This form indicates Denning was unable to
work for a period of nearly four months in 2002 and was
thereafter limited to 4-5 hour workdays (20-25 hours a week) with
no lifting, bending, kneeling, squatting, crouching, carrying,
reaching, pushing, pulling, working on uneven surface or stairs,
or prolonged sitting or standing.  Tr. 417.  Dr. Harris stated
twice that Denning's physical condition either rendered her
unable to work or severely limited her ability to work.
Tr. 173-75, 417.

**B.  The ALJ's Decision.**

Although the ALJ found Denning's fibromyalgia, right-
shoulder impingement, and degenerative disc disease were severe
impairments, he determined Denning was not disabled because
Denning had the RFC to perform past relevant work and could still
perform work in the local and national economy with her
limitations.  Tr. 34, 43.

The ALJ provided a comprehensive history of Dr. Harris's
treatment of Denning, but the ALJ did not indicate that he gave
any weight to Dr. Harris's opinions.  Tr. 34-35.  As Denning
notes, the ALJ's sole basis for rejecting Dr. Harris's opinion
appears to be that he believed Dr. Harris merely signed and dated
an Oregon Employment Department medical information form after
Denning filled it out.  Tr. 33.  In other words, the ALJ believed
the physical limitations on the form were "all written by [the]

claimant" herself.  Tr. 33.  The ALJ, however, did not provide
any evidence that Denning filled out the form and did not give a
substantive reason for concluding the information on the form was
not Dr. Harris's opinion.

        Although the ALJ disputes the veracity of the medical
information form, Dr. Harris signed a letter written by Denning a
year earlier in which he also indicated Denning could not work.
Tr. 173-75.  In that document, Dr. Harris stated he had "reviewed
this letter and [found] the objective data outlined to be true
and accurate."  Tr. 173.  Robert Jackman, M.D., who treated
Denning eleven times between February and August 2004, similarly
stated in a letter on March 3, 2004:  "Given the fact that
[Denning] has these radiculopathies, the orthopedic problems and
the fibromyalgia, . . . she finds it quite difficult to work and
to hold a job and for this reason she finds it very difficult to
earn a living."  Tr. 619, 629-50.  In addition, Michael
Rosenfield, M.D., and Domenik Sisto, M.D., two of Denning's
previous treating physicians, indicated she could not work or
was otherwise limited because of her physical ailments.
Dr. Rosenfield found Denning was unable to work for a period of
20 days in March 2001 and for an indefinite period beginning in
July 2001.  Tr. 170, 303.  In April 2001, Dr. Sisto concluded
Denning was physically limited to working part-time for a maximum
of three to six hours a day "with no pulling, pushing, or

reaching, and certainly no heavy lifting, crouching, kneeling, or stair climbing." Tr. 298. Thus, substantial medical evidence in the record supports Dr. Harris's opinion.

As noted, the ALJ may reject the opinion of a treating physician if it is inconsistent with another treating or examining physician's opinion by setting out specific and legitimate reasons for doing so. *Magallanes*, 881 F.2d at 751. Th ALJ may also reject the opinion of a physician whose opinion is conclusory or based solely on the subjective complaints of the claimant that are not adequately supported by clinical findings. *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). Here, however, the ALJ failed to provide specific reasons for rejecting Dr. Harris's opinion, and the record does not provide a basis to undermine the information on the Oregon Employment Department form that he signed.

In any event, the ALJ gave "great weight" to a conflicting opinion by State Disability Determination Services (DDS)[2] internist Charles Spray, M.D., and, as a result, determined Denning's RFC exceeded her work limitations as described in the document signed by Dr. Harris. Tr. 37. In fact, the ALJ adopted Dr. Spray's assessment of Denning's RFC nearly verbatim without

---

[2] Disability Determination Services (DDS) is a federally funded state agency that makes eligibility determinations on behalf and under the supervision of the Social Security Administration pursuant to 42 U.S.C. § 421(a) and 20 C.F.R. § 416.903.

14 - OPINION AND ORDER

providing reasons for assigning his opinion such weight.
Tr. 37, 43, 612-18.  Moreover, Dr. Spray was a nonexamining
physician who only reviewed Denning's medical records, and the
form he completed indicates it required only 20 minutes to "read
the instructions, gather necessary facts and fill out the form."
Tr. 612.

    As noted, the opinion of a nonexamining physician standing
alone only constitutes a basis to reject the opinion of a
treating physician if it is supported by other evidence in the
record.  *Lester*, 81 F.3d at 831.  Here Dr. Spray opined Denning
can work an eight-hour day; can push, pull, lift, kneel, crouch,
crawl; can do limited reaching in all directions; and can climb
ramps and stairs.  Tr. 37.  Nonetheless, Dr. Spray's conclusions
are not corroborated by other medical evidence in the record and,
accordingly, do not constitute a sufficient basis for rejecting
the opinion of Denning's treating physician, Dr. Harris.

    On this record, therefore, the Court finds the ALJ erred
when he, in effect, rejected Dr. Harris's opinion and failed to
provide legally sufficient reasons supported by substantial
evidence in the record for doing so.

**III. Dr. Bartol.**

    On July 9, 2002, Dr. Bartol performed a consultive
psychodiagnostic examination on referral from DDS to assess
Denning's "psychological functioning with particular regard to

PTSD, anxiety, cognitive disturbance, and the extent to which they may contribute to her overall ability to work." Tr. 538. Dr. Bartol's consultation consisted of clinical and mental-status examinations, but it did not include a review of Denning's medical records with the exception of one letter from Dr. Harris. Tr. 538.

Denning contends the ALJ failed to consider Dr. Bartol's opinion adequately and asserts Dr. Bartol's opinion establishes Denning had a "severe level of decreased functioning," which, if properly weighed, would have resulted in a finding of disability.

**A.  Dr. Bartol's Opinion.**

Dr. Bartol diagnosed Denning as having chronic PTSD with delayed onset, panic disorder without agorapobia, personality disorder NOS with borderline features, fibromyalgia with chronic pain, and a Global Assessment Functioning (GAF) score of 50. Tr. 544. "A GAF score is a rough estimate of an individual's psychological, social, and occupational functioning to reflect the individual's need for treatment." *Vargas v. Lambert*, 159 F.3d 1161, 1164 n.2 (9th Cir. 1998). Nevertheless, even though a GAF score of 50 indicates serious symptoms, Dr. Bartol did not identify specific functional limitations arising from Denning's mental impairments that would affect her ability to work. Tr. 538-44.

**B.    The ALJ's Decision.**

The ALJ determined Denning does not have any severe mental impairments.  Tr. 34.  After summarizing Dr. Bartol's report, the ALJ gave Dr. Bartol's opinion little weight.  Tr. 36.  The ALJ noted Dr. Bartol failed to review Denning's medical records with the exception of one letter from Dr. Harris.  Tr. 36.  The ALJ found Dr. Bartol's failure to review Denning's medical records significant in light of the fact that the record shows Denning has a history of exaggerating and inconsistently reporting her symptoms.  Tr. 36.  For example, the ALJ pointed out Denning did not disclose her history of substance abuse when questioned by Dr. Bartol.  Tr. 36.  Michelle Whitehead, Ph.D., in her psychodiagnostic examination of Denning on July 3, 2001, found Denning over-exaggerated some symptoms while minimizing others.  Tr. 331.  Tyler Arkless, M.D., also indicated Denning seemed to dramatize her reactions to pain.  Tr. 559.  Even Dr. Bartol reported Denning's affect was "somewhat exaggerated."  Tr. 541.

In addition, the ALJ pointed out that Dr. Bartol's conclusion as to Denning's GAF is contradicted by Dorothy Anderson, Ph.D., a DDS psychologist.   Tr. 594-607.  Dr. Anderson concluded Denning suffered only mild limitations in daily living; social functioning; and maintaining concentration, persistence, and pace.  Tr. 604.  Dr. Anderson also found Denning did not experience episodes of extended-duration decompression.  Tr. 604.  The ALJ gave Dr. Anderson's opinion great weight and found the

17  -  OPINION AND ORDER

record reflects Denning "functions at a higher level than Dr. Bartol assessed her at." Tr. 36, 37. Thus, the ALJ provided "specific, legitimate reasons" for rejecting Dr. Bartol's GAF assessment. *Magallanes*, 881 F.2d at 751.

The Court notes the ALJ properly rejected Dr. Bartol's assessment of the severity of Denning's mental impairments but did not discount Dr. Bartol's diagnoses of PTSD, personality disorder, panic disorder, and chronic pain. Tr. 544. Moreover, Dr. Bartol's diagnoses were echoed by several physicians. Dr. Anderson, for example, also diagnosed Denning with personality disorder, anxiety disorder, and substance addiction disorder. Tr. 594. Although Dr. Anderson found Denning's mental impairments are not severe, she concluded Denning has mild functional limitations affecting her ability to handle daily activities; to maintain social function; and to maintain concentration, persistence, or pace. Tr. 604. These functional limitations are further reflected in the report of Dr. Whitehead, who concluded Denning had trouble functioning on the job because of her problems with opiate addiction. Tr. 326-34. In fact, the record is replete with diagnoses by physicians such as Drs. Harris, Jackman, and Rosenfield who found Denning suffers from PTSD, anxiety disorder, somatic disorder, and personality disorder. Tr. 305, 309-10, 569, 570, 573-75, 640, 657.

Nevertheless, the record does not reflect the extent to

which Denning is functionally limited in her ability to work as a result of her impairments.  In addition, the hypotheticals posed

by the ALJ to the VE at Step Five did not include any of Denning's mental impairments or potential functional limitations resulting from those impairments.  Tr. 707-20.  If the testimony of a VE is to be considered reliable, the ALJ's hypotheticals must include all of the claimant's mental and physical functional limitations reflected in the record.  *Thomas v. Barnhart*, 278 F.3d 947, 956 (9th Cir. 2002).  *See also Flores v. Shalala*, 49 F.3d 562, 570-71 (9th Cir. 1995).

To the extent that the record does not reflect whether Denning's impairments would functionally limit her ability to work, the ALJ has a duty to develop the record in order to make such a determination.  20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).  *See also Massanari*, 270 F.3d at 841. Particularly when the claimant is unrepresented, the ALJ must "scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts.  He must be especially diligent in ensuring that favorable as well as unfavorable facts and circumstances are elicited." *Higbee v. Sullivan*, 975 F.2d 558, 561 (9th Cir. 1992) (citation omitted).

On this record, therefore, the Court concludes the ALJ erred

when he failed to consider adequately the opinion of Dr. Bartol,
to develop the record adequately as to the functional limitations
of Denning's mental impairments on her ability to work, and to


include any such limitations in the hypotheticals posed to the VE
to determine whether jobs in the local and national economy exist
that Denning could perform.


**REMAND**

The decision whether to remand for further proceedings or
for the payment of benefits is a decision within the discretion
of the Court. *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir.
2000). This decision turns on the likely utility of further
proceedings. *Id.* at 1179. The Court may "direct an award of
benefits where the record has been fully developed and where
further administrative proceedings would serve no useful
purpose." *Smolen*, 80 F.3d at 1292.

The Ninth Circuit has established a three-part test "for
determining when evidence should be credited and an immediate
award of benefits directed." *Harman*, 211 F.3d at 1178. The
Court should grant an immediate award of benefits when:

> (1) the ALJ has failed to provide legally
> sufficient reasons for rejecting such
> evidence, (2) there are no outstanding issues
> that must be resolved before a determination

> of disability can be made, and (3) it is
> clear from the record that the ALJ would be
> required to find the claimant disabled were
> such evidence credited.

*Id.*  The second and third prongs of the test often merge into a

single question:  Whether the ALJ would have to award benefits if

the case were remanded for further proceedings.  *Id.* at 1178 n.2.

When it is not clear whether the ALJ would be required to award

benefits if the improperly rejected evidence were credited, the

Court has discretion as to crediting the evidence.  *See Connett

v. Barnhart,* 340 F.3d 871, 876 (9th Cir. 2003).

The Court has concluded the ALJ did not properly consider

the opinion of Dr. Harris.  If Dr. Harris's opinion were

credited, Denning's RFC would have to be reassessed and any

additional functional limitations would have to be included in a

hypothetical to the VE.  In addition, any functional limitations

arising from Denning's mental impairments and their effect on

Denning's ability to work need to be identified and included in

any hypothetical*.  See Robbins v. Soc. Sec. Admin.*, 466 F.3d 880,

886 (9th Cir. 2006)(when posing hypotheticals to a VE, the ALJ

may not "disregard properly supported limitations.").

On this record, therefore, the Court concludes remand for

further administrative proceedings consistent with this Opinion

and Order is appropriate.

## CONCLUSION

For these reasons, the Court **REVERSES** the decision of the Commissioner and **REMANDS** this matter for further administrative proceedings consistent with this Opinion and Order.

IT IS SO ORDERED.

DATED this 26th day of September, 2007.


/s/ Anna J. Brown

_____

ANNA J. BROWN
United States District Judge

22  -  OPINION AND ORDER